## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID BENHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-CV-339-JED-FHM** |
| | ) | |
| **OZARK MATERIALS RIVER** | ) | |
| **ROCK, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

The Court has for its consideration defendant's Motion to Dismiss (Doc. 30), plaintiff's

response (Doc. 31), defendant's reply (Doc. 41), and plaintiff's surreply (Doc. 56).

### I.   BACKGROUND

Plaintiff, David Benham, filed this citizen suit seeking injunctive relief and civil penalties

under §§ 402 and 404 of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. ("CWA").  Benham

claims that defendant Ozark Materials River Rock, LLC's ("Ozark") mining activities along

Saline Creek, which has been designated as a "High Quality Water" by the Oklahoma Water

Resources Board, have adversely affected the environmental health of the creek and surrounding

land.

Ozark is engaged in the business of gravel mining and thus excavates rock from the bed

of Saline Creek and washes and sorts those materials on nearby land.  Benham's lawsuit claims

that Ozark is operating its mining activities in and around Saline Creek in violation of the CWA

by, among other things, discharging pollutants into the water, failing to obtain necessary permits,

and discharging dredge and fill materials into the creek and surrounding wetlands without a

permit.  On September 21, 2011, after this lawsuit had been filed, Ozark entered into a Consent

Order with the Oklahoma Department of Environmental Quality ("ODEQ").  The Consent Order imposed a fine of $10,000 upon Ozark as a result of past violations and detailed the abatement steps taken by Ozark in response to ODEQ's determination that violations had occurred.

In response to Benham's complaint, Ozark filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing that Benham lacks standing to bring his claims, that his claims are moot, and that Benham has otherwise failed to state a claim.

## II.    STANDARDS

Ozark primarily seeks dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction on standing and mootness grounds.  Generally speaking, in considering a motion to dismiss, the Court must rely only on the allegations contained in the complaint.  *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  This is not so when a party seeks dismissal pursuant to Rule 12(b)(1).  "When a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'"  *Davis* ex rel. *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Holt*, 46 F.3d at 1003).  "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]."  *Id*.

## III.    ANALYSIS

### A.  Standing

Ozark argues that Benham lacks Article III standing to bring this lawsuit.  To establish Article III standing, a plaintiff must show that: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed

to merely speculative, that the injury will be redressed by the relief requested."[1]  *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-81)).  Standing must be analyzed from the facts as they existed at the time the complaint was filed.  *Id.* at 1284 (citing *Laidlaw*, 528 U.S. at 184).  Ozark's standing challenge relates to all three elements of Article III standing.

**Injury in Fact**

First, Ozark argues that Benham has suffered no injury in fact because he does not have a sufficient connection to the affected land and that the conduct complained of by Benham – dredge and fill activity – is not a violation of § 404 of the CWA.  What constitutes an "injury in fact" depends on whether the plaintiff seeks prospective or retrospective relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 105 (1983).  To seek prospective injunctive relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.  *Id.* at 101-02, 107 n. 8.  "Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."  *Tandy*, 380 F.3d at 1283.  The threatened injury must be "certainly impending" and not merely speculative.  *Id.* (quoting *Laidlaw*, 528 U.S. at 190).  If a claimed injury is contingent upon speculation or conjecture, it is beyond the bounds of a federal court's jurisdiction.  *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  "A plaintiff seeking retrospective relief, on the other hand, satisfies the 'injury in fact' requirement if [he] suffered a past injury that is concrete and particularized."  *Tandy*, 380 F.3d at 1284 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11 (1995)).  "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the

---

[1]  These requirements are aptly referred to as "injury," "traceability," and "redressability."  *See, e.g*., *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158-59 (10th Cir. 2005).

affected area and are persons "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity." *Laidlaw*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Ozark argues that the land which Benham alleges has been damaged by Ozark's operations is not owned by Benham, but is instead owned by three different limited liability companies. Benham responds with a declaration attesting that he owns 254 acres of property that is intersected by Saline Creek, albeit indirectly through the three LLCs. (Doc. 31-2). Ozark responded to this by advancing an argument in its reply brief that the three LLCs with title to the property are the real party in interest, not Benham. (Doc. 41, at 2). This argument is of no avail. As demonstrated by *Laidlaw*, even if Benham did not own the property adjacent to Saline Creek, his status as a frequent user of the creek for recreational purposes would be sufficient to constitute an injury in fact for standing purposes. *See* 528 U.S. at 183-84. In that regard, Benham states that, while his permanent home is in Edmond, Oklahoma, he visits Saline Creek many times throughout the year to fish, raft, swim, and wade in Saline Creek. (*Id.*). Benham attests that Ozark's operations are causing harm to areas of Saline Creek upstream, where his property intersects with the creek. Specifically, Benham states that Ozark is causing the banks of Saline Creek to erode, the gravel within the stream to erode, riparian vegetation to erode, an increase in water temperature, and a reduced quality of the water upstream. The Court finds these allegations sufficient to support a concrete and particularized injury.

Ozark also argues that Benham has suffered no injury because dredge and fill activities cannot be a violation of § 404 of the CWA. This argument appears throughout Ozarks' motion to dismiss as a part of its challenges based upon standing, mootness, and failure to state a claim under Rule 12(b)(6). In the interest of brevity, the Court will fully analyze the efficacy (or lack

thereof) of this contention in this section only, as to standing, mootness, and whether Benham has stated a claim under § 404.

Benham's § 404 claim is based upon his allegation that Ozark has dredged and filled wetland areas surrounding Saline Creek; placed dirt, sand, and gravel into the center of Saline Creek; and performed its washing and sorting in a wetland area (what Benham describes as sidecasting) – all without a necessary permit under § 404.  (Doc. 2, at 9-10).  Ozark maintains that the U.S. Army Corps of Engineers ("Army Corps"), which is tasked with regulating wetlands under the CWA, does not issue permits for this type of activity because such activity is not regulated under § 404.  Ozark relies solely on *National Mining Assn. v. United States Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998) in support of its argument.

Ozark's construction of National Mining proves far too much.  *National Mining* involved § 404, which authorizes the Army Corps to regulate "discharges" in wetlands throughout the United States and issue permits "for the discharge of dredged or fill material into the navigable waters at specified disposal sites."   33 U.S.C. § 1344 (CWA § 404).    The CWA defines "discharge" as "any addition of any pollutant to navigable waters from any point source."  *Id*. at § 1362.  In *National Mining*, the D.C. Circuit invalidated the "Tulloch Rule" promulgated by the Army Corps, which expanded the definition of "discharge" to include any redeposit of dredged material; *e.g*. "incidental fallback" which occurs when a "when a bucket used to excavate material from the bottom of a river, stream, or wetland is raised and soils or sediments fall from the bucket back into the water."  145 F.3d at 1403.  In striking down the Tulloch Rule, the court noted that the "straightforward statutory term 'addition' cannot reasonably be said to encompass the situation in which material is removed from the waters of the United States and a small portion of it happens to fall back."  *Id*. at 1404.  However, as the D.C. Circuit noted, "incidental

fallback" is not to be confused with "sidecasting" – the regulation of which was not challenged in *National Mining*. *Id*. at 1407. Sidecasting involves "the deposit of dredged or excavated material from a wetland back into that same wetland...." *U.S. v. Deaton*, 209 F.3d 331 (4th Cir. 2000). Such activity remains regulated under the CWA. *See* 33 C.F.R. § 323.2(d)(1)(iii).[2]

Were Ozark's construction of *National Mining* correct, it would seriously undermine the regulatory impact of § 404. The actions complained of by Benham involve more than incidental fallback. Specifically, he alleges that Ozark is engaged in "sidecasting" and other regulated dredging and filling of wetlands without a permit, all in violation of § 404. Accordingly, what Benham alleges in his complaint constitutes an injury in fact under § 404. As noted, this analysis applies with equal force to Ozark's remaining standing arguments, as well as its mootness and Rule 12(b)(6) arguments with respect to Count II (*see* fn. 6, *infra*), which maintain that the complained of actions do not constitute a violation of § 404.

**Traceability and Redressability**

Ozark's argument with respect to traceability and redressability is less than clear. However, it appears that Ozark's position as to each of these standing elements is a rehashing of its argument that Benham has suffered no injury. For example, Ozark states in its section regarding traceability as follows:

> Here there is no injury as the Complaint alleges the Defendant operated without a section 402 permit. Defendant was issued all permits by the ODEQ prior to this lawsuit being filed. Thus, there can be no injury caused to Plaintiff by the lack of a permit since the permits were issued. Moreover, there can be no causal connection between the alleged injury under Count II for dredge and fill since the Army Corps did not and is not issuing permits for the type of activity conducted by Defendant.

---

[2] This regulation covers "[a]ny addition, *including redeposit other than incidental fallback*, of dredged material, including excavated material, into waters of the United States which is incidental to any activity, including mechanized landclearing, ditching, channelization, or other excavation. (Italics added).

(Doc. 30, at 7).  Ozark takes essentially the same approach with respect to redressability, arguing that, because no violation has occurred, Benham's alleged injury is not redressable.  (*See* Doc. 30, at 7-8).[3]

"A plaintiff's injury is fairly traceable to the challenged action of a defendant where there is a causal connection between the injury and the conduct complained of - that is, where the injury is the result of the challenged action of the defendant and not the result of the independent action of some third party not before the court."  *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1080 (10th Cir. 2009) (internal quotations omitted).  "[T]he relevant inquiry is whether ... the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision."  *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976).  "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power."  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring)).  In other words, for an injury to be redressable, the Court must be able to provide a remedy as to the parties before the Court.

Benham alleges in his complaint that Ozark's actions are in violation of the CWA and are resulting in harm to Saline Creek and his adjacent property upstream.  This alleged harm – discharged pollutants and other adverse effects to the land and water – is, according to plaintiff's

---

[3]  As previously noted, Ozark's argument that the actions alleged by Benham in support of his § 404 claim are not regulated under the CWA is without merit and does not affect his standing.  In addition, the Consent Order entered into between ODEQ and Ozark would not affect whether Benham has standing because standing is analyzed in reference to the time of the filing of the complaint, which occurred here prior to the Consent Order.  *See Tandy*, 380 F.3d at 1283.

complaint, directly caused by Ozark's operations in and around Saline Creek.   Benham's alleged injury is thus fairly traceable to Ozark's actions.   Benham's alleged injury would also be remedied were the Court to grant the relief he requests, which amounts to civil penalties and injunctive and declaratory relief because Ozark would be required to cease any violations of the CWA and civil penalties could be imposed for past violations.

**Zone of Interests**

Ozark argues that Benham lacks standing because he is not within the zone of interests underlying the CWA and that his interest is no different than that of the general public.  The zone of interests test – unlike the Article III standing requirements – remains a prudential limitation on standing; that is, one which has been historically imposed by the courts.  *See United States v. Windsor*, 133 S.Ct. 2675, 2685 (2013).  The zone of interests standing limitation has generally been applied to suits brought under the Administrative Procedures Act against federal agencies, but has also been applied in suits which did not involve the review of federal administrative actions.  *Bennett v. Spear*, 520 U.S. 154, 163 (1997).  The Supreme Court has made clear that "the breadth of the zone of interests varies according to the provisions of law at issue." *Id*.  It has also suggested that the test is inapplicable where Congress has chosen to provide citizens with the power to bring suits under a particular federal law, such as the Endangered Species Act.  *See id.* at 164 ("The first question in the present case is whether the ESA's citizen-suit provision, set forth in pertinent part in the margin, negates the zone-of-interests test (or, perhaps more accurately, expands the zone of interests). We think it does.") (footnote omitted); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress' decision to grant a particular plaintiff the right to challenge an Act's constitutionality (as here, see § 692(a)(1), *supra*, at 2315-2316) eliminates any prudential standing limitations…."); Robert A. Anthony, *Zone-Free Standing for Private*

*Attorneys General*, 7 Geo. Mason L. Rev. 237 (1999) (arguing that private attorney general statutes, such as the citizen suit provision of the CWA, confer standing on the plaintiff, thereby negating the prudential zone-of-interests test).

Given these authorities, which suggest the citizen suit provision of the CWA either expands or negates the zone of interests test, and having already found that he has established Article III standing, it is debatable whether Benham must show that he falls within the zone of interests protected by the CWA.  Nevertheless, assuming he must do so, the Court finds that Benham falls within the zone of interests protected by the CWA.

The primary objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  Implicit in this concept is the protection of landowners and outdoor enthusiasts who share an interest in preserving the natural beauty of our nation's waters – as evidenced by Congress' creation of the citizen suit provision of the CWA.  *See* 33 U.S.C. § 1365.[4]   Benham's suit seeks to enjoin and remedy a perceived violation of the CWA which is resulting in the pollution of Saline Creek.  Thus, his interests clearly fall within those which Congress sought to protect in enacting the CWA.[5]

---

[4]   This provision permits "any citizen" to commence a civil action "on his own behalf" against those in violation of the CWA.  The Act defines a "citizen" as "a person or persons having an interest which is or may be adversely affected."  *Id*. at 1365(g).

[5]   Ozark also argues that Benham's interests are no different than those of the general public.  In its discussion of the Article III injury in fact requirement, the Court has already explained how Benham is personally affected by Ozark's operations in Saline Creek and how his interests are therefore differentiated from those of the general public.

### B.   Mootness - § 402 Claim

Ozark advances distinct mootness arguments with respect to Benham's §§ 402 and 404 claims.  As to the § 402 claim, Ozark argues that the Consent Order entered into by Ozark and ODEQ renders the claim moot.[6]

A federal court has jurisdiction only over "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Laidlaw*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 (1982)).  "[I]f it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.'"  *Id*. (citation omitted).   Accordingly, the defendant's burden of proving voluntary cessation is a "stringent" one: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Id*. (quoting *United States v. Concentrated Phosphate Export Assn*., 393 U.S. 199, 203 (1968)).   However, this stringent voluntary cessation standard is not applied where the defendant's cessation results from

---

[6]   As to the § 404 claim, Ozark contends that it is moot because (1) the violations alleged by Benham are not a violation of § 404 and (2) the Army Corps has determined that no § 404 violations are occurring.  The first part of this argument has already been analyzed and disposed of in the Court's discussion of whether Benham has standing.  The second is likewise without merit.  An agency's decision to not take action – which is alleged by Benham to be incorrect in this instance – does not render a citizen suit moot.  *See San Francisco Baykeeper v. Cargill Salt Div*., 481 F.3d 700, 706 (9th Cir. 2007) ("The purpose of the citizen suit provision of the CWA, 33 U.S.C. § 1365, is to permit citizens to enforce the Clean Water Act when the responsible agencies fail or refuse to do so.").

the actions of a third party, such as where an agency takes enforcement action. *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 893 (10th Cir. 2008); *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008).

Ozark argues that the Consent Order imposed by ODEQ has mooted Benham's § 402 claim and that the voluntary cessation doctrine should not be applied. The Court agrees. On November 15, 2010, Benham provided Ozark with the requisite Notice of Intent to Sue (the "Notice Letter"), which explained the basis of his forthcoming §§ 402 and 404 claims.[7] He filed this suit on June 1, 2011, alleging both claims. On September 21, 2011, Ozark entered into the Consent Order with ODEQ. The Consent Order specifically discusses Benham's Notice Letter, as follows:

> 5. On November 15th, 2010, Mr. David Benham submitted a copy of a Notice of Citizen's Intent to Sue Ozark Materials to Mr. Steve Thompson, Executive Director, Oklahoma Department of Environmental Quality alleging the following violations of the Clean Water Act:
>
> a) The Respondent was operating surface impoundments not on its original request.
>
> b) The Respondent had made no written requests to ODEQ for these new sites as evidenced by notice of violations in ODEQ's October 18, 2010 letter.

---

[7] Both parties rely upon – and extensively quote – the Notice Letter, which was purportedly attached to Ozark's reply brief (*see* Doc. 41, at 2-3). Despite that reference, and the parties' clear reliance on the Notice Letter, it was not attached to that filing. It is, however, attached as an exhibit to Ozark's response in opposition to plaintiff's motion for partial summary judgment (Doc. 81-9) and has thus been reviewed by the Court. Even if neither party had intended to attach the Notice Letter, which is not the case here, the Court would be permitted to take judicial notice of it, as it is filed of record in this case. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("this court has held that a court may, Sua sponte, take judicial notice of its own records and preceding records if called to the court's attention by the parties").

c)      The Respondent had been operating unpermitted point source discharges (piles of gravel) since May 16, 2010 at its new wash plant site.

d)      The Respondent had left abandoned equipment on its former wash plant site and this equipment represented unpermitted discharges.

e)      The bucket of the Respondent's backhoe used to remove gravel from Saline Creek represented a point-source violation of Section 402 of the Clean Water Act.[8]

(Doc. 30-1, at 3).   The Consent Order also details the chronology of events following its inspection of Ozark's operation on October 18, 2010, in response to Benham's original Citizen Complaint.  On November 22, 2010, Ozark applied for a Class III Total Retention Impoundment General Discharge Permit, which was ultimately issued by ODEQ on December 30, 2010.   On December 28, 2010, ODEQ issued a Notice of Violation, which detailed the abatement necessary to bring Ozark into compliance.   In response, Ozark took the steps required of it to obtain necessary permitting.   The Consent Order states that "Respondent has implemented all measures requested to abate the violations.   To date, [O]DEQ has found no acts of any continuing violations of the permits that have been issued."  (*Id.*, at 6).  A fine of $10,000 was imposed upon Ozark within the Consent Order as a result of past violations.   The Consent Order clearly and unequivocally states that it "resolves all issues" raised in both Benham's Citizen Complaint and his Notice Letter.   (*Id.*, at 4-5).   Thus, on its face, the Consent Order moots all aspects of Benham's § 402 claim.[9]

---

[8]   In recognition that § 404 violations fall within the jurisdiction of the Army Corps, ODEQ's Consent Order does not discuss Benham's allegations regarding § 404.  (*See* Doc. 30-1).

[9]   To the extent plaintiff now argues that his § 402 claim is broader than the violations found in his Notice Letter and resolved by the Consent Order, any such claim would be barred.   *Karr v. Hefner*, 475 F.3d 1192, 1206 (10th Cir. 2007) (affirming dismissal of CWA claims against certain defendants because plaintiffs' notice letters were inadequate); *Old Timer, Inc. v. Blackhawk-Cent. City Sanitation Dist.*, 51 F. Supp. 2d 1109, 1118 (D. Colo. 1999) ("many of

The Court also declines to apply the stringent voluntary cessation doctrine.  Ozark's abatement actions and permit applications were not voluntary in the true sense.  ODEQ had inspected Ozark's property and issued notice of the violations, which culminated in the Consent Order.  Ozark is bound by the terms of the Consent Order and remains subject to compliance monitoring.  (*See* Doc. 30-1, at 11).  In addition, the Consent Order makes clear that ODEQ found no continuing violations with respect to Ozark's operations, nor has Benham suggested that Ozark has failed to comply with the Consent Order.  Benham has not suggested collusion or bad faith on the part of ODEQ, and the Court finds no reason to question ODEQ's actions.

Under the CWA, "the citizen suit is meant to supplement rather than to supplant" government enforcement action.  *Gwaltney of Smithfield, Ltd.  v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).  "Citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'"  *Id.* (quoting S. Rep. No. 92–414, p. 64 (1971)).  In addition, permitting a claim to go forward based upon the same conduct which has already been penalized by an agency in an enforcement action would undermine the goals of ensuring that agencies remain the primary enforcers of the CWA.  Polluters would have no incentive to negotiate with the relevant agency or enter into agreements such as the Consent Order if there is no guarantee that the same conduct will not be the subject of duplicative litigation.  "The agency must be given great deference to proceed in a manner it considers in the best interests of all parties involved."  *Karr*, 475 F.3d at 1198.

---

these violations were not included in [the] notice of intent to sue, and thus may not be the subject of a CWA suit").  For example, Benham has made allegations in response to Ozark's motion to dismiss that the total retention impoundment operated by Ozark is porous and allows waste to leak into Saline Creek.  The Notice Letter contains no such allegation.  (*See* Doc. 81-9).

Benham's § 402 claim under the CWA is dismissed as moot.[10]   As noted earlier, Benham's § 404 claim is not subject to dismissal under any of the theories advanced by Ozark in its motion to dismiss.

**IT IS THEREFORE ORDERED** that defendant Ozark's motion to dismiss (Doc. 30) is **granted in part and denied in part**.  Plaintiff Benham's claim under § 402 is dismissed as moot, and his § 404 claim remains.

**SO ORDERED** this 24th day of September, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[10]    Having found Benham's § 402 claim moot, the Court need not address Benham's Rule 12(b)(6) argument with respect to that claim.  In addition, the Court has already found that Ozark's Rule 12(b)(6) argument as to Benham's § 404 claim is without merit.

14