UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DAVID BENHAM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 11-CV-339-JED-FHM |
| | ) |
| **OZARK MATERIALS RIVER** | ) |
| **ROCK, LLC,** | ) |
| | ) |
| Defendant. | ) |

# OPINION AND ORDER

The Court has for its consideration defendant's (First) Motion to Stay Proceedings (Doc. 58), defendant's Motion to Strike Plaintiff's Response Brief to Defendant's Motion to Stay Along with Exhibits and Request for Emergent and Immediate Relief Including Admonishing Plaintiff's Lawyers for Failure to Comply with this Court's Standards of Conduct (Doc. 63), Plaintiff's Motion to Provide Supplemental Factual Information in Opposition to Defendant's Motion to Stay Proceedings (Doc. 66), and defendant's (Second) Motion to Stay Proceedings (Doc. 97).

## BACKGROUND

Plaintiff David Benham filed this citizen suit seeking injunctive relief and civil penalties under §§ 402 and 404 of the Clean Water Act, 33 U.S.C. § 1251 et seq. ("CWA"). Benham claims that defendant Ozark Materials River Rock, LLC's ("Ozark") mining activities along Saline Creek, which has been designated as a "High Quality Water" by the Oklahoma Water Resources Board, have adversely affected the environmental health of the creek and surrounding land.

Ozark is engaged in the business of gravel mining and thus excavates rock from the bed of Saline Creek and washes and sorts those materials on nearby land. Benham's lawsuit alleged that Ozark was and is operating its mining activities in and around Saline Creek in violation of the CWA by, among other things, discharging pollutants into the water, failing to obtain necessary permits, and discharging dredge and fill materials into the creek and surrounding wetlands without a permit. On September 24, 2013, the Court entered an Opinion and Order on defendant's Motion to Dismiss (Doc. 122), which dismissed plaintiff's § 402 claim as moot. Benham's claim under § 404, which alleges unlawful dredge and fill activity by Ozark, remains.

## DISCUSSION

### A.  Defendant's [First] Motion to Stay (Doc. 58)

In its first stay motion, Ozark argues that this litigation should be stayed to make way for a legal malpractice action filed by Ozark against plaintiff's counsel in state court. Ozark argues that a stay will prevent an unnecessary expenditure of judicial resources and would not result in prejudice to plaintiff. Benham opposes a stay, arguing primarily that Ozark has not met its burden of showing a likelihood of success on the merits or irreparable harm.

This Court has the inherent authority to control its docket, which includes the power to stay cases in the interests of judicial economy. *United Steelworkers of America v. Oregon Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The Tenth Circuit has suggested several factors to guide courts when considering whether to issue a stay, including "[1] whether the defendants are likely to prevail in the related proceeding; [2] whether, absent a stay, the defendant will suffer irreparable

harm; [3] whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and [4] the public interests at stake." *United Steelworkers of America*, 322 F.3d at 1227.

The Court finds that Ozark has not made a strong showing of likelihood of success on the merits. Indeed, Ozark did very little to explain its claims in the collateral proceeding. Ozark's legal malpractice claim appears to be premised upon the allegation that plaintiff's counsel breached fiduciary duties owed to Ozark by taking a position adverse to Ozark where there is alleged to have been a prior attorney-client relationship between plaintiff's counsel and Ozark. Plaintiff's counsel, Jason Aamodt, and defendant's counsel, Wilfred Wright, were formerly associated as Aamodt & Wright, PC, in Tulsa, Oklahoma. In approximately November of 2007, Mr. Wright – Ozark's counsel in this proceeding – began representing Ozark in connection with litigation which the Grand River Dam Authority ("GRDA") brought against Ozark. Mr. Aamodt attests that he had no knowledge of this representation; he had no participation in the representation; and that Mr. Wright had begun essentially practicing alone in Claremore, Oklahoma, at the time – completely independent of Mr. Aamodt.[1] It was not until July 2008 that each attorney formed separate firms.

Benham argues that, under the circumstances, he breached no ethical rules or fiduciary duties. Using Oklahoma Rules of Professional Conduct 1.7 and 1.9 as guideposts, Benham posits that Ozark's legal malpractice action is likely to fail because he neither gained confidential information with respect to Ozark, nor took a position adverse to a current client.[2] The Court

---

[1] Mr. Aamodt also contends that no conflicts check was initiated by Mr. Wright, thus adding to Mr. Aamodt's asserted ignorance of the litigation between Ozark and the GRDA.

[2] While the Rules do not form the basis for a cause of action for legal malpractice, they do serve as a relevant standard of conduct for attorneys and are often cited in legal malpractice cases.

3

agrees, in light of the record before it, that Ozark faces a very high hurdle with respect to prevailing on its claims against plaintiff's counsel. Rule 1.9 states in pertinent part:

> (b) A lawyer shall not knowingly represent a person in the *same or a substantially related matter* in which a firm with which the lawyer formerly was associated had previously represented a client
>
> > (1) whose interests are materially adverse to that person; and
> >
> > (2) *about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c)* that is material to the matter; unless the former client gives informed consent, confirmed in writing.

Okla. R. Prof. Cond. 1.9 (italics added). Simply stated, to violate this rule, a lawyer would have to represent a client that is adverse to a former client whom he gained confidential information from in a case that is substantially related to the current representation, and do so without informed consent. This litigation is unlikely to be considered substantially related to the GRDA litigation, which was essentially an eviction action involving land rights. The case before this Court concerns alleged violations of the CWA which have little, if anything, to do with the property rights of the GRDA. In addition, Mr. Aamodt has attested that he gained no information regarding Ozark which is protected by Rules 1.6 and 1.9(c).

Rule 1.7 likewise does not appear to be implicated under the circumstances before this Court. Rule 1.7 prohibits representing a current client who is directly adverse to another current client. According to Benham, Ozark contends that, at the time Mr. Aamodt began representing Benham in this litigation, he was also representing Ozark because Aamodt & Wright, PC had not yet dissolved. Given that Mr. Aamodt and Mr. Wright started new firms in 2008 and practiced

4

completely independently, this claim seems to this Court to be unlikely to succeed, especially given that the case *sub judice* was not filed until June of 2011.[3]

Ozark has not demonstrated that it is likely to succeed on the merits of its collateral lawsuit. Accordingly, this factor weighs against a stay of this litigation.

The remaining factors also counsel against a stay of this case. First, Ozark has failed to allege any irreparable harm. The harm alleged by Ozark – a continuing breach of fiduciary duties by plaintiff's counsel – can be remedied by damages should it prevail in its legal malpractice case. Second, a stay will simply result in further delay for Benham in the prosecution of his claims against Ozark, and if Benham's lawsuit is meritorious, further harm to the environment. Third, public interest favors compliance with federal environmental statutes and expeditious resolution of civil litigation. Given these considerations, a stay based upon the collateral state court litigation is unwarranted. Ozark's first Motion to Stay (Doc. 58) is thus denied.

**B. Defendant's Motion to Strike (Doc. 63)**

Ozark's Motion to Strike (Doc. 63) asks the Court to strike plaintiff's response to Ozark's first Motion to Stay (Doc. 62). Ozark argues that the information contained in the response and some of the accompanying evidentiary materials which discuss the breakdown in relationship between former shareholders of Aamodt & Wright, PC, Jason Aamodt and Wilfred Wright, is scandalous and irrelevant. The Court finds that the materials do not warrant being stricken under Fed. R. Civ. P. 12(f) as they are not "redundant, immaterial, impertinent, or scandalous." While the referenced information is only tangentially related to the issues presented in the Motion to

---

[3] Aamodt & Wright, PC's formal dissolution occurred in November, 2011, by order in Tulsa County District Court. (*See* Doc. 58, at 3).

Stay, the materials do not meet the standard for being stricken. Ozark's Motion to Strike (Doc. 63) is therefore also denied.

### C. Plaintiff's Motion to Provide Supplemental Factual Information in Opposition to Defendant's Motion to Stay Proceedings (Doc. 66)

Plaintiff seeks to supplement his response to defendant's first Motion to Stay (Doc. 62). Plaintiff provides the supplemental information within his motion to supplement, which plaintiff argues demonstrates that Ozark's corporate representative, Randy Beeson, acknowledged in his deposition that plaintiff's counsel did not provide legal services to Ozark. Ozark filed its response out of time (*see* Doc. 76). Thus, plaintiff's motion is deemed confessed. *See* LCvR 7.2. Plaintiff's Motion to Provide Supplemental Factual Information in Opposition to Defendant's Motion to Stay Proceedings (Doc. 66) is granted and the Court has considered the supplemental information provided within the motion.

### D. Defendant's [Second] Motion to Stay Proceedings (Doc. 97)

Ozark seeks a second stay premised upon the doctrine of primary jurisdiction. Ozark argues that the Court should defer to the ODEQ and Army Corps' expertise in monitoring and enforcing compliance with the CWA issues presented by Benham's claims.

The common law doctrine of primary jurisdiction provides courts with flexible discretion to defer adjudication of certain matters while a specialized administrative agency is exercising jurisdiction over those matters. Specifically, primary jurisdiction applies "where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64 (1956). Two policy goals underlie this doctrine: "(1) to ensure 'desirable uniformity in determinations of certain administrative questions;' and (2) to 'promote resort to

agency experience and expertise where the court is presented with a question outside its conventional experience.'" *B.H. v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 803 (N.D. Okla. 2007) (quoting *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996)). If an administrative agency has primary jurisdiction over a matter, the proper course for a court is to stay the case until the administrative agency has completed its work. *Id.*

Courts have generally analyzed five factors in determining whether the primary jurisdiction doctrine is applicable. *Id.*; *see also Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1377 (10th Cir. 1989); *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway*, 857 F.Supp. 838 (D.N.M. 1994). Those factors are: (1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; (4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested. *B.H.*, *supra*, 506 F. Supp. 2d at 803.

First, this case presents facts which venture somewhat outside the realm of typical judicial experience. Benham's remaining §404 claim is based upon alleged discharge of dredge and fill materials into Saline Creek and surrounding wetlands. While these issues are somewhat technical and specialized, they are not so complex as to warrant abstention.

Second, Ozark would not be subject to conflicting orders from the Court and the relevant agencies at issue because, as noted, plaintiff's § 402 claim has been dismissed. The issues raised by Benham's § 402 claim were the subject of ODEQ's Consent Order. The remaining claim relates to issues over which the Army Corps exercises jurisdiction. Benham's main contention in this respect seems to be that the Army Corps is simply wrong in its failure to recognize continuing violations of the CWA. The Army Corps has performed inspections of Ozark's

7

operation and has thus far declined to take action. Hence, there is, in essence, no agency action to which the Court should defer. Doing so would be akin to finding that plaintiff's claim lacks merit because the agency did not make a finding that there has been a violation – something the Court declined to do in response to the invitation presented by Ozark's motion to dismiss. Because the Army Corps has not placed Ozark under any order with respect to Benham's § 404 allegations, a favorable ruling for Benham would not result in a conflicting order.

Third, as noted above, the agency proceedings instituted by ODEQ are no longer relevant to the claim before the Court. No action has been taken by the Army Corps. Hence, this factor weighs against the application of primary jurisdiction.

Fourth, Benham has alleged in substance that the Army Corps has failed to act on the merits of his allegations. The materials submitted by Ozark demonstrate the Army Corps performed an inspection as recently as July of 2013. Benham disagrees with the conclusions reached by the Army Corps, but he has provided no evidence that the Army Corps has failed to act diligently on the information it has received.

Finally, the type of relief sought by Benham – injunctive relief and civil penalties – would ordinarily weigh in favor of primary jurisdiction abstention. "Primary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with administrative agency's proceedings." *B.H.*, 506 F. Supp. 2d at 805. However, because the Army Corps has not taken formal action regarding Benham's § 404 allegations – other than inspecting Ozark's operations – the Court could issue civil penalties and injunctive relief without interfering with any agency proceeding.

8

In light of the Court's analysis of the above factors, the Court finds that Benham's claims should not be stayed under the doctrine of primary jurisdiction. Accordingly, defendant's second Motion to Stay Proceedings (Doc. 97) is **denied**.

## CONCLUSION

**IT IS THEREFORE ORDERED** that:

Defendant's (First) Motion to Stay Proceedings (Doc. 58) is **denied**.

Defendant's Motion to Strike Plaintiff's Response Brief to Defendant's Motion to Stay Along with Exhibits and Request for Emergent and Immediate Relief Including Admonishing Plaintiff's Lawyers for Failure to Comply with this Court's Standards of Conduct (Doc. 63) is also **denied**.

Plaintiff's Motion to Provide Supplemental Factual Information in Opposition to Defendant's Motion to Stay Proceedings (Doc. 66) is **granted**.

And Defendant's (Second) Motion to Stay Proceedings (Doc. 97) is **denied**.

**IT IS FURTHER ORDERED THAT** the deadline for trial briefs and exchange of demonstrative exhibits, and the pretrial conference and trial settings are hereby stricken, to be reset following the Court's ruling as to the plaintiff's motion for partial summary judgment and related filings.

Finally, the "Unagreed Pretrial Order" submitted to the Court on September 20, 2013 is also stricken. A deadline for submission of an **Agreed** Pretrial Order shall be provided along with new scheduling deadlines.

**SO ORDERED** this 24th day of September, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

9