# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DAVID BENHAM,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11-CV-339-JED-FHM |
| **OZARK MATERIALS RIVER ROCK, LLC,** | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The Court has for its consideration plaintiff's Motion for Partial Summary Judgment (Doc. 71), plaintiff's Motion to Exclude the Report and Expert Testimony [of] Defendant's Proposed Expert Witness, Randal Beeson (Doc. 70), and plaintiff's Motion to Strike Regarding Defendant's Exhibit Three to Defendant's Response to Plaintiff's Partial Motion for Summary Judgment (Doc. 82).

### BACKGROUND

Plaintiff David Benham filed this citizen suit seeking injunctive relief and civil penalties under §§ 402 and 404 of the Clean Water Act, 33 U.S.C. § 1251 et seq. ("CWA"). Benham claims that defendant Ozark Materials River Rock, LLC's ("Ozark") mining activities along Saline Creek, which has been designated as a "High Quality Water" by the Oklahoma Water Resources Board, have adversely affected the environmental health of the creek and surrounding land.

Ozark is engaged in the business of gravel mining and thus excavates rock from the bed of Saline Creek and washes and sorts those materials on nearby land. Benham's lawsuit alleges that Ozark was and is operating its mining activities in and around Saline Creek in violation of

the CWA by, among other things, discharging pollutants into the water, failing to obtain necessary permits, and discharging dredge and fill materials into the creek and surrounding wetlands without a permit. On September 24, 2013, the Court entered an Opinion and Order on defendant's Motion to Dismiss (Doc. 122), which dismissed plaintiff's § 402 claim. Benham's claim under § 404, which alleges unlawful dredge and fill activity by Ozark, remains.

## DISCUSSION

### I. Plaintiff's Motion to Strike (Doc. 82)

On April 12, 2013, plaintiff filed his motion for partial summary judgment (Doc. 71) and a *Daubert* motion (Doc. 70).[1] Upon receipt of Ozark's response brief (Doc. 81) to Benham's motion for partial summary judgment, Benham filed the instant motion to strike (Doc. 82), urging the Court to strike the Amended Expert Report of Randal Beeson, which is attached as exhibit three to Ozark's response. Specifically, Benham argues that the amended report was untimely because it included additional testing and measurements performed during a site inspection that should have occurred prior to Beeson's original report. Benham further contends that the post-summary judgment testing and related amendments to Beeson's report, each of which occurred in early May of 2013, were performed in direct response to Benham's motions. Ozark responds that it is routine for experts to amend their reports and that Benham made no attempt to depose Beeson as an expert witness.

The Tenth Circuit has recognized that "an expert's initial Rule 26 report cannot always anticipate every possible challenge to the report." *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir. 2004). As such, "it may be appropriate to permit the party using the expert to submit

---

[1] Plaintiff's *Daubert* motion sought to exclude the expert testimony and expert report (amended and/or original) of Ozark's designated expert witness, Randal Beeson, who is also the subject of the motion to strike.

supplements to the report in response to assertions by opposing experts that there are gaps in the expert's chain of reasoning." *Id*.  Here, the Court finds that, while the amendment to Beeson's expert report was untimely, it is of no significant consequence as the changes to the report have little, if any, effect on plaintiff's motion for partial summary judgment.  The Court notes that the vast majority of the changes, which were pointed out by plaintiff through submission of a highlighted version of the amended report (Doc. 82-5), relate to plaintiff's § 402 claim, which was dismissed by the Court as moot (*see* Doc. 122).  In addition, Benham had the opportunity in his reply brief in support of his motion for partial summary judgment to challenge (and, in fact, did challenge) the assertions made in Beeson's amended report.  As such, Benham has not been prejudiced by the late amendment.  The amended opinions of Mr. Beeson which relate to Benham's § 404 claim were minimal.

In light of these considerations, the Court declines to strike the amended report and plaintiff's Motion to Strike Regarding Defendant's Exhibit Three to Defendant's Response to Plaintiff's Partial Motion for Summary Judgment (Doc. 82) is denied.

**II.    Plaintiff's *Daubert* Motion (Doc. 70)**

Benham also argues that Mr. Beeson's testimony and expert report (amended and/or original) should be excluded pursuant to Fed. R. Evid. 702 *and Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).  Beeson, an environmental consultant, is presented by Ozark as an expert in environmental site assessment.  According to his report, Beeson has conducted two site assessments of Ozark's operational area for purposes of this litigation and states that he has been involved as a consultant for Ozark over the past 12 years.  Benham asserts that Beeson's testimony is neither reliable, nor helpful.  Benham's criticisms of Beeson's report are that: Beeson failed to provide data to support his conclusion regarding the effect of the

3

GRDA Pumpback Lake; he lacks experience in identification of wetlands; he failed to consider necessary factual materials and scientific evidence; and he relies upon the lack of agency action in reaching his conclusions.

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702). In *Daubert*, the Supreme Court suggested factors to guide "trial courts in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *Baines*, 573 F.3d at 985 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* inquiry is "flexible," and the district court does not need to consider every *Daubert* factor. *Id.* at 989–90; *see also Bitler v. A.O. Smith. Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) ("[T]his list is neither definitive nor exhaustive and [ ] a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability."). Finally, "while *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial. *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) (citing *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002)). Thus, "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence,

4

weighing its persuasive value upon presentation." *Valley View Dev., Inc. v. U.S. ex rel. U.S. Army Corps of Engineers*, 721 F. Supp. 2d 1024, 1047 (N.D. Okla. 2010) (quoting *Tyson Foods*, 565 F.3d at 780).

The Court has reviewed Beeson's amended report and finds that Benham's concerns are largely unfounded. First, while Beeson does not provide specific data to support his conclusion regarding the GRDA Pumpback Lake, he says little more than to posit that Saline Creek is "impacted" by it. As the Supreme Court has noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). As to Benham's second concern, Beeson does not purport to be an expert in identification of wetlands and instead states that, in reaching his opinions, he has relied on the Wetland Survey performed by Enercon Services, Inc. (Doc. 83-1). Third, Benham criticizes Beeson's report because he acknowledged not having reviewed ODEQ's Notice of Violation and stated that he had not measured the dimensions of Ozark's total retention pond. These two criticisms do not merit exclusion of Beeson's testimony. Beeson's lack of prior knowledge of the Notice of Violation issued by ODEQ is an area where Beeson can be subjected to cross examination, but does not render his opinion so unreliable as to warrant exclusion. Beeson's failure to measure the total retention pond's dimensions is now irrelevant because Benham's § 402 claim dealing with the total retention pond issues has been dismissed as moot (*see* Doc. 122). Finally, the Court does not find, as Benham urges, that Beeson purports to find a lack of CWA violations simply because the relevant agencies have not found continuing violations. Instead, Beeson's report states that he considered the inspection reports of the

agencies in reaching his conclusions. Again, this is an area appropriate for cross examination, not a basis for exclusion of Beeson's testimony.

Beeson's amended expert report and testimony have not been shown to be so unreliable or unhelpful as to warrant their exclusion under Rule 702 and *Daubert*. This is especially so given that this case will be tried to the Court, not a jury. Accordingly, plaintiff's Motion to Exclude the Report and Expert Testimony [of] Defendant's Proposed Expert Witness Randal Beeson (Doc. 70) is denied.

### III.     Plaintiff's Motion for Partial Summary Judgment (Doc. 71)

Benham's motion for partial summary judgment (Doc. 71) seeks a determination by the Court that Ozark has violated §§ 402 and 404 of the CWA. As noted, Benham's § 402 claim was dismissed by the Court subsequent to the filing of Benham's summary judgment motion. Accordingly, the Court will determine only whether there is no genuine dispute of material fact as to the § 404 claim and whether Benham is entitled to judgment as a matter of law.

### Material Facts

On March 8, 2011, Ozark was served with Benham's Notice of Intent to Sue (the "Notice Letter") under § 505 of the CWA. The Notice Letter asserted violations of §§ 402 and 404 of the CWA. On April 12, 2011, Enercon Services, Inc. ("Enercon"), an environmental consulting company, submitted, at Ozark's request, a proposal to conduct a wetland assessment at Ozark's mining site. Enercon performed an assessment and submitted a proposal which suggested, among other things, that Ozark obtain an after-the-fact § 404 permit and develop a mitigation plan for impacts resulting from Ozark's mining operations. Ozark did not seek such a permit and does not currently have a § 404 permit. However, there is much dispute between the parties as to whether any § 404 violations have actually occurred in Ozark's operations. The Tulsa District of

the Army Corps of Engineers ("Army Corps") has twice inspected Ozark's operations – on October 6, 2010, and June 28, 2012. In each instance, the Army Corps determined that "[n]o violations of the CWA or the [Sand and Gravel Mining in Oklahoma Waterways] Guidelines [for Operators] were observed." (Docs. 81-7 and 81-8).

## Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## Analysis

Benham points to five alleged violations of § 404 by Ozark which he argues entitle him to summary judgment as to liability: 1) loss of wetland areas; 2) removal of the riparian zone along Saline Creek; 3) failure to maintain a 25-foot wide buffer zone of undisturbed gravel from the work zone to the wetted perimeter of the stream; 4) excavation practices that have induced channel shift, scour holes, and erosion along the banks; and 5) general discharge of fill materials into Saline Creek.  (Doc. 71, at 19-20).  Ozark argues that, based upon the report of its expert witness and the findings of the Army Corps, there exists, at a minimum, a dispute of fact as to each of these contentions.  In addition, Ozark argues that Benham is now raising alleged violations of the CWA for which notice was not provided to Ozark in Benham's Notice Letter. Specifically, Ozark argues that Benham's allegations regarding removal or riparian zones, failure to maintain a proper buffer zone, and excavation activities causing channel shift, etc. were *not* raised in the Notice Letter.

8

As an initial matter, the alleged § 404 violations Benham cites in his summary judgment briefing significantly exceed those raised in his Notice Letter. The Tenth Circuit has clearly delineated the standard regarding the specificity required of notice letters:

> The EPA's regulation requires the notice to provide "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation." 40 C.F.R. § 135.3(a). The guiding principle is that "the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney*, 484 U.S. at 60, 108 S.Ct. 376. Accordingly, notice is to be evaluated from the recipient's perspective, and the notice's identification of the alleged violations must be clear:
>
> The language of the regulation does not suggest that the notice may be good enough if it generally orients the agency or violator as to the type of violation.... **[T]he recipient of the notice must understand from the notice what the citizen is *alleging*-not what the citizen could allege if the citizen knew more or cared about other possible transgressions**.

*Karr v. Hefner*, 475 F.3d 1192, 1200 (10th Cir. 2007) (italics in original, emphasis added). *Karr* provides a very clear standard which must be met by those providing notice of a violation. Under this standard, Benham's Notice Letter falls short of providing notice of some of the alleged violations for which Benham now seeks a determination of liability. Benham's Notice Letter states as follows with respect to his § 404 allegations:

> Discharges of dredged or fill material into waters of the United States may only occur if permitted by the Army Corps of Engineers (herein the "ACOE"). 33 U.S.C. § 1311(a); 33 U.S.C. § 1344(a). Waters of the United States, as defined in section 404, includes wetlands, which are areas "inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3(b); *see also U.S. v. Riverside Bayview Homes*, 474 U.S. 121, 131-32 & n. 8 (1985). Saline Creek is surrounded by wetlands. A significant portion of your mining operations have both dredged and filled these designated wetlands. See Attachment 2. The ACOE has no record of you being issued a section 404 permit for these dredge and fill activities.

> Any action which results in the filling of waters of the United States, including wetlands such as the ones you have filled, must be permitted through the ACOE. 33 U.S.C. 1311(a); 33 U.S.C. 1342. You have violated this section by placing large amounts of dirt, sand, and gravel into the center of Saline Creek without a permit in order to form a more convenient access road for its trucks. This road stretches underneath the S 4437 road and connects land owned by the Grand River Dam Authority with land owned by you. The attached photograph shows you filling this wetland on September 14, 2006. *See* Attachment 3. The location of your illegal discharges of fill material is identified on the attached air photo at approximately the point labeled "1". *See* Attachment 2. It is believed that you have discharged fill materials in numerous other areas along Saline Creek, but because of the secretive nature in which you conduct your business, those violations have been difficult to document. To the extent such documentation can be found, Mr. Benham intends to amend this notice so as to include those additional violations.
>
> Additionally, it is believed that situs for the current washing and sorting site is a wetland. Thus, you currently are and have been engaging in sidecasting, which is the deposit of dredged or excavated material from a wetland into a different area of the same wetland. Sidecasting has been held to be a discharge of a pollutant that violates section 404 of the CWA. *See U.S. v. Deaton*, 209 F.3d 331, 332-333 (4th Cir. 2000). The location of your illegal discharges is identified on the attached air photo at approximately the point labeled "3". *See* Attachment 2. These activities began on or around May 15, 2010 and occur each time you excavate gravel from the stream and dump it in your washing and sorting site.
>
> Moreover, it is believed that your previous washing and sorting site (located on land leased from the Grand River Dam Authority) was in a wetland. Such sidecasting activities occurred from approximately July 1, 2005 to May 15, 2010. The location of your illegal discharges is identified on the attached air photo at approximately the point labeled "4". *See* Attachment 2.

(Doc. 81-9, at 5-6). Viewing these allegations from Ozark's perspective, Benham did provide notice that he believed Ozark was improperly dredging and filling some of the wetlands adjacent to Saline Creek and was engaging in "sidecasting" during excavation, as described above. Benham's Notice Letter, however, does not provide notice to Ozark that it was (or is) i. removing the riparian zone along Saline Creek; ii. failing to maintain a 25 foot wide buffer zone of undisturbed gravel from the work zone to the wetted perimeter of the stream; or iii. engaging in excavation practices that have induced channel shift, scour holes, and erosion along the banks

of Saline Creek. As such, the allegations for which notice was not provided cannot now form the basis of Benham's § 404 claim. *Karr*, 475 F.3d at 1200; *Old Timer, Inc. v. Blackhawk-Cent. City Sanitation Dist.*, 51 F. Supp. 2d 1109, 1118 (D. Colo. 1999) ("many of these violations were not included in [the] notice of intent to sue, and thus may not be the subject of a CWA suit").

As to the § 404 violations fairly raised by Benham's Notice Letter, the Court finds that a genuine dispute of material fact exists and Benham is therefore not entitled to summary judgment. Benham's expert opines that between 2010 and 2013, Ozarks' activities have resulted in a loss of .10 acre of wetlands at the mining site. Benham also notes that the October 17, 2011 environmental consultation provided by Enercon acknowledges that an "after-the-fact" § 404 permit would be needed by Ozark because "construction impacts have already occurred." (Docs. 71-22 and 71-23). In contrast to these assertions, Ozark points out that on October 7, 2010, and June 28, 2012, the Army Corps performed on-site inspections of Ozark's property, and after reviewing those respective inspection findings, determined – in both instances – that "[n]o violations of the CWA or the Guidelines were observed." (Doc. 81-8). The 2010 inspection was performed directly in response to the allegations made in Benham's Notice Letter. As a result, the Army Corps statement that no violations were observed implicitly carries with it a finding that it did not observe the alleged violations for which Benham now seeks a determination of liability. Thus, the Army Corps inspections and findings that no violations of § 404 were present is sufficient to create a genuine dispute of fact as to Benham's § 404 claim. Accordingly, Benham's request for summary judgment as to this claim is denied.

**IT IS THEREFORE ORDERED** that:

Plaintiff's Motion to Strike Regarding Defendant's Exhibit Three to Defendant's Response to Plaintiff's Partial Motion for Summary Judgment (Doc. 82) is **denied**.

Plaintiff's Motion to Exclude the Report and Expert Testimony [of] Defendant's Proposed Expert Witness Randal Beeson (Doc. 70) is **denied**.

Plaintiff's Motion for Partial Summary Judgment (Doc. 71) is **denied**.

A new schedule setting this matter for trial will be entered herewith.

**SO ORDERED** this 10th day of October, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE